UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEKEMA GENTLES<br>    *Plaintiff,*<br><br>v.<br><br>THE BOROUGH OF POTTSTOWN;<br>F. RICHARD DRUMHELLER, *The Borough of Pottstown Police Chief*; SHARON VALENTINE-THOMAS, *The Borough of Pottstown Mayor*; DANIEL WEAND, *The Borough of Pottstown President*; MARK FLANDERS, *The Borough of Pottstown Manager*; SGT. PONTO, *The Borough of Pottstown Police Officer*, OFFICER JEFFERY PORTOCK; OFFICER MARTIN; and, OFFICER UNRUH<br>    *Defendants.* | CIVIL ACTION<br>NO. 19-0581 |

**MEMORANDUM**

**Jones, II  J.**                                                                                                                      **August 26, 2019**

### I.   INTRODUCTION

Plaintiff Sekema Gentles commenced this action against Defendants Borough of Pottstown, Borough officials, and Borough police officers, alleging violations of both state and federal law in connection with his arrest by Pottstown police officers. Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5),(6) and 12(e) for insufficient service of process, failure to state a claim, and for a more definite statement, respectively.  For the reasons set forth below, Defendants' Motion shall be granted and Plaintiff shall be afforded leave to amend.

1

## II. FACTUAL BACKGROUND

Plaintiff alleges that on March 1, 2017, he was stopped by Borough of Pottstown Police Officers Portock, Ponto, Martin and Unruh (collectively "Defendant Officers"). (Compl. ¶ 8.) Defendant Officers asked for Plaintiff's identification, however Plaintiff refused to provide identification unless Defendant Officers notified Plaintiff of the reason for being stopped. (Compl. ¶ 17.) Defendant Officers informed Plaintiff he was under criminal investigation, handcuffed him, and placed him under arrest. (Compl. ¶ 18.) Plaintiff alleges Defendant Officers then asked Plaintiff's fiancée for her identification and threatened to arrest her and place their children in "Child Services" if she did not comply. (Compl. ¶ 19.) Plaintiff's fiancée identified herself and informed Defendant Officers that she and Plaintiff had just purchased "the house."[1] (Compl. ¶ 20.) Defendant Officers released Plaintiff and charged him with Disorderly Conduct. (Compl. ¶ 21.) On June 12, 2017, Plaintiff was adjudged not guilty of the charge. (Compl. ¶ 22.)

## III. STANDARD OF REVIEW[2]

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*, 515

---

[1] Plaintiff alleges no facts regarding the location of the arrest or how the purchase of "the house" is relevant to the instant action.

[2] Although Defendants seek relief under Federal Rule of Civil Procedure 12(b)(5), (6) and 12(e), Plaintiff withdraws his claims against former Pottstown officials who have argued insufficient service. Further, this Court's disposition of the 12(b)(6) motion renders a 12(e) analysis unnecessary. Accordingly, the court shall focus solely on the issue of failure to state a claim.

F.3d at 233 (internal quotation marks and citation omitted).  This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court does not typically consider matters outside the pleadings.

In this particular matter, Plaintiff has attached an unsworn declaration to his brief in opposition to Defendants' 12(b)(6) Motion.  However, "[t]he United States Court of Appeals for the Third Circuit has stated that an affidavit filed in opposition to a pending motion to dismiss clearly comprised a matter outside the pleading." *Steinagel v. Valley Oral Surgery*, Civil Action No. 12-cv-05645, 2013 U.S. Dist. LEXIS 141146, at *15 (E.D. Pa. Sep. 30, 2013) (citing *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989)). "Matters outside the pleading must be excluded lest the motion to dismiss becomes a motion for summary judgment." *Steinagel*, 2013 U.S. Dist. LEXIS 141146, at *15. Furthermore, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (quoting *Car Carriers, Inc. v. Ford Motor Corp.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

Inasmuch as Plaintiff's Declaration serves no purpose other than to supplement his pleadings, the same shall not be considered by the court in its assessment of Defendants' Motion.

## IV. DISCUSSION

As a preliminary matter, Plaintiff voluntarily withdraws all claims against former employees/agents of the Borough, including Defendants Drumheller, Valentine-Thomas, and Flanders, thereby rendering Defendants' request for 12(b)(5) relief moot. (Pl.'s Opp. 1.) Plaintiff also withdrawals all claims against Officers Martin and Pronto. (Pl.'s Opp. 2.) With respect to Defendants' motion for dismissal of Plaintiff's punitive damages claim, Plaintiff clarifies that he no longer seeks monetary damages against Defendants sued in their official capacities but does seek declaratory and injunctive relief for the alleged racially discriminatory policies of Defendant Borough. (Pl.'s Opp. 5.) A discussion of Plaintiff's remaining claims follows.

### A. Section 1983 & *Monell* [3]

As a result of Plaintiff's arrest, he seeks to hold the Borough of Pottstown liable for alleged violations of his constitutional rights based on the conduct of the Borough's police officers, acting through the Borough's Police Department (BPPD). (Compl. ¶ 1.) However, Plaintiff's Complaint fails to plead a sufficient factual basis to sustain these claims.

Section 1983 of Title 42 "provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. County of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (citing 42 U.S.C. §1983). In order to state a cause of action under Section 1983, a plaintiff must first allege that an individual deprived him of a federal right. *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 741 (E.D. Pa. 2014). Second, the plaintiff must allege that the individual who deprived him of that right acted under color of state or territorial law. *Id.*

---

[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

4

at 741. Plaintiff herein alleges he was deprived of his constitutional right to be protected against an "unlawful arrest, seizure, [d]etention and imprisonment." (Compl. ¶ 2.) Plaintiff further contends that Defendant Officers, who were acting under color of state law through the BPPD, deprived him of such a right. (Compl. ¶ 27.) However, this Court's assessment does not end here.

It is well settled that "[a] municipality or county may not be held vicariously liable under §1983 for the actions of its agents[.]" *Hanks v. Cty. of Del.*, 518 F. Supp. 2d 642, 651 (E.D. Pa. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). An exception exists when a municipality "has a policy or custom which is the 'moving force' behind a constitutional violation." *Id*. To prevail on such a claim, a plaintiff must show a direct causal link between the policy and a constitutional violation. *Id*. (citing *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997)) "If the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Id.* at 651-652.

In this case, Plaintiff's *Monell* claims rest upon the pure *assumption* that Defendant Borough has policies, practices and customs in place that cause a pattern of constitutional violations. (Compl. ¶¶ 12-15.) Specifically, Plaintiff alleges that the cause of his arrest, which occurred on March 1, 2017, was a direct result of the policies and customs of the BPPD which allow for racial profiling. (Compl. ¶ 29.) However, review of Plaintiff's Complaint reveals insufficient facts to permit this Court to infer the police engaged in unconstitutional conduct as a result of an alleged policy or custom by the Borough. Plaintiff simply does not identify any actual municipal policy or custom. Instead, he conclusively pleads that the Borough "develops and implements police arrest policies and practices; fostering a culture that encourages and supports 'best practices' evolving from daily arrest tactics which include the use of 'hunches' for

5

which it is legally liable for." (Compl. ¶ 10.) Again, Plaintiff's Complaint is devoid of any concrete basis for his assumption that such a policy or custom actually exists. As such, the issue of causation cannot be reached and Plaintiff's claim necessarily fails.

Assuming *arguendo* police violated Plaintiff's constitutional rights during the March 1, 2017 arrest, the individual actions of the police officers are generally not enough to hold the municipality liable under Section 1983. An exception would be if a policymaker directed the unlawful decision-making of the officers. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986). Again, Plaintiff herein fails to provide any facts that would permit this Court to infer he suffered a violation of his constitutional rights as a result of same. Accordingly, Plaintiff's *Monell* claim shall be dismissed.

### i. Fourth Amendment Violation

Part and parcel of Plaintiff's *Monell* claim, is his assertion that a violation of his rights under the Fourth Amendment occurred as a result of his arrest, which he claims was made without probable cause.[4] Specifically, Plaintiff contends as follows:

> The constitutional, statutory, civil and common law violations by the Defendants through the actions of its police department and Police Officer Defendants Ponto, Portac, Martin and Unruh, were/are directly and proximately caused by policies, practices and/or customs developed, approved, implemented, enforced, encouraged and sanctioned by Defendant Borough of Pottstown, including the ***failure: a) to adequately supervise and train its officers*** and agents, thereby preventing the use of police hunches to stop, detain, and arrest men of color, without probable cause.

(Compl. ¶ 29) (emphasis added).

It is well settled that "[i]f the conduct at issue relates to a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to

---

[4] Plaintiff does not assert a Fourth Amendment violation separate from his *Monell* claim. (Pl.'s Opp. 3.)

deliberate indifference to the rights of persons with whom those employees will come into contact." *Raj v. Dickson City Borough*, Civil Action No. 3:17-0692, 2018 U.S. Dist. LEXIS 13213, at *6-7 (M.D. Pa. Jan. 26, 2018) (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (internal quotation marks omitted). "To amount to 'deliberate indifference,' the need for training must be 'obvious,' and the lack of training 'so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez v. Panarello*, 119 F. Supp. 3d 331, 344 (E.D. Pa. 2015) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). In order to plausibly allege such a claim, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at *7 (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

In this case, Plaintiff alludes to the fact that these "policies and practices" are regularly implemented, though his Complaint contains no instance(s) of allegedly violative police behavior aside from Plaintiff's own interaction with Defendant Officers. Plaintiff's conclusory statement that Borough Defendants had policies and customs that did not "prevent[ ] the use of police hunches to stop, detain, and arrest men of color, without probable cause" is insufficient. (Compl. ¶ 29) As discussed above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*, 515 F.3d at 233 (internal quotation marks and citation omitted). Here, Plaintiff as provided this Court with nothing more "than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because his Fourth Amendment claim does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[,]"

it lacks plausibility and must be dismissed. *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### ii. Fifth Amendment Violation

In the "Introduction" to Plaintiff's Complaint, he summarily cites a violation of his rights under the Fifth Amendment. (Compl. ¶ 1.) Plaintiff does not provide any additional facts in relation to this claim. Consequently, the complete absence of any facts regarding a Fifth Amendment violation renders said claim deficient and the same shall be dismissed.

### B. State Law Claims

### i. Malicious Prosecution

Plaintiff next asserts a claim of Malicious Prosecution. In order to prevail on this claim, a plaintiff must show: "1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the defendant initiated the proceeding without probable cause; 4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018). Defendants seek dismissal of Plaintiff's malicious prosecution claim on the basis that Plaintiff has failed to establish the fourth element. This Court agrees.

"Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Washington v. Brown*, No. 16-02955, 2017 U.S. Dist. LEXIS 69565, at *21 (E.D. Pa. May 5, 2017) (citing *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988)). In this case, Plaintiff has not pleaded sufficient facts to plausibly demonstrate the lack of probable

cause. As such, malice cannot be inferred and Plaintiff's malicious prosecution claim cannot survive.

### ii. Intentional Infliction of Emotional Distress

Finally, Plaintiff claims Intentional Infliction of Emotional Distress. Pennsylvania courts recognize a cause of action under the Restatement (Second) of Torts Section 46, for Intentional Infliction of Emotional Distress (IIED). In order to prevail on an IIED claim, a plaintiff must establish extreme and outrageous conduct by the defendant as the cause of emotional distress. *White v. Brommer*, 747 F. Supp. 2d 447, 465 (E.D. Pa. 2010). Extreme and outrageous conduct is defined as "conduct so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Atkinson v. City of Phila.*, CIVIL ACTION NO. 99-1541, 2000 U.S. Dist. LEXIS 8500, at *19-20 (E.D. Pa. June 20, 2000) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).

A reading of Plaintiff's Complaint *in toto* clearly reveals the insufficiency of Plaintiff's IIED claim. Plaintiff alleges he suffered intentional infliction of emotion distress resulting in "loss of liberty, depression, anxiety, anger, alienation, mental anguish, fear, deprivation, loss of wages and diminishing mental and physical health." (Compl. ¶¶ 23-24.) Said claim is based upon Plaintiff's legal conclusion that emotional distress was intentionally and maliciously inflicted upon him. (Compl. ¶ 39.) However, absent sufficient facts to plausibly demonstrate that there was no probable cause for his arrest and sufficient facts regarding the purported outrageousness and extreme degree of Defendants' conduct, Plaintiff's IIED claim cannot be sustained. Accordingly, said claim shall be dismissed.

### C. Pennsylvania Constitution

The "Introduction" to Plaintiff's Complaint summarily cites a violation of his rights under Article 1, Sections 1, 8, 9 and 13 of the Constitution of the Commonwealth of Pennsylvania. However, just as with his Fifth Amendment claim, Plaintiff fails to articulate any facts or circumstances in relation to any such violations. Consequently, all claims brought pursuant to the Pennsylvania Constitution shall be dismissed.

### D. Punitive Damages

Plaintiff's Complaint seeks punitive damages against all Defendants. (Compl. *Ad Damnum* Clause, §d.) Defendants seek dismissal of *any* claim for punitive damages by Plaintiff. However, in his Response to the instant Motion, Plaintiff concedes that punitive damages are not available against defendants sued in their official capacities. (Pl.'s Opp. 5.)

In order for Plaintiff to potentially receive punitive damages against Defendants in their individual capacities, he must establish that Defendants' conduct was "motivated by evil motive or intent, or…involves reckless or callous indifference to the federally protect rights of others." *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 710 (E.D. Pa. 2011) (citing *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989)). Inasmuch as Plaintiff has failed to adequately plead any of his claims, the issue of punitive damages is rendered moot.

### E. Amendment

Amendments to a Complaint may be made as a matter of course, but only if the amendment occurs within: "21 days after serving it, or…if the pleading is one which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

Otherwise, leave must be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Moreover, "in civil rights cases[,] district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

This Court notes that Plaintiff herein is proceeding *pro se*. A *pro se* plaintiff must be granted leave to amend "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *El v. Wehling*, 548 F. App'x 750, 753 (3d Cir. 2013) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). Inasmuch as this Court cannot conclude that amendment would be futile, Plaintiff shall be granted leave to do so.

## V. CONCLUSION

For the reasons set forth hereinabove, Defendants' Motion to Dismiss shall be granted and Plaintiff shall be afforded leave to amend in accordance herewith.[5]

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II   J.

---

[5] This Court notes that Defendants herein assert a defense of qualified immunity. However, "attempts to obtain qualified immunity by rebutting or supplementing the allegations in [a] [p]laintiff's Complaint are improper at [the motion to dismiss] stage of the proceedings." *Collick v. William Paterson Univ.*, 699 F. App'x 129, 132 (3d Cir. 2017).