IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEKEMA GENTLES,<br>    *Plaintiff*, | : |
| v. | : |
| THE BOROUGH OF POTTSTOWN POLICE OFFICER(S) JEFFREY PORTOCK, *in both personal and official capacities*; UNRUH, *in both personal and official capacities*; and, UNIDENTIFIED OFFICER, *in both personal and official capacities*<br>    *Defendants*. | :<br><br>:<br><br>: | CIVIL ACTION<br>NO. 19-0581 |

## MEMORANDUM

**Jones, II   J.**                                                                 **June 22, 2020**

### I.   Introduction

The above-captioned matter involves federal claims for unlawful seizure under the Fourth and Fifth Amendments and malicious prosecution, as well as state law claims for malicious prosecution and intentional infliction of emotional distress against Defendants Jeffrey Portock, Brandon Unruh, and an unidentified officer ("Defendants"). Specifically, Plaintiff, proceeding *pro se*, alleges that Defendants violated his civil rights when they arrested, detained, and prosecuted him without probable cause or reasonable suspicion of a crime. Plaintiff was provided with an opportunity to amend his Complaint and the instant Motion to Dismiss followed. For the reasons set forth herein, Defendants' Motion shall be granted in part and denied in part.

## II.     Background

### A.     Procedural History

Plaintiff filed his initial Complaint on February 8, 2019 against Officers Pronto and Martin, as well as various other officials of the Borough of Pottstown. (ECF No. 1.) Defendants answered with a Motion to Dismiss on March 12, 2019. (ECF No. 16.)  In Plaintiff's Response thereto, he voluntarily withdrew his claims against Officers Pronto and Martin, as well as the Pottstown officials.  (ECF No. 17.)  On August 28, 2019, this Court granted the remaining Defendants' Motion to Dismiss. (ECF No. 21.) Plaintiff was given an opportunity to amend, and did so.  (ECF No. 23.)  Once again, the Complaint was met with a Motion to Dismiss by the remaining Defendants. (ECF No. 24.) Plaintiff failed to respond to the motion, therefore this Court issued an Order directing Plaintiff to show cause by a date certain as to why Defendants' Motion should not be granted as unopposed.  (ECF No. 25.)  Plaintiff failed to do so.  Therefore, by Order dated November 13, 2019, this Court granted Defendants' Motion to Dismiss. (ECF No. 26.) Plaintiff then filed his Response (ECF No. 27), as well as a Motion asking this Court to reverse its Order of Dismissal. (ECF No. 28).  While this Motion was pending, Plaintiff filed a Notice of Appeal with the Third Circuit Court of Appeals. (ECF No. 29.) This Court granted Plaintiff's Motion seeking reversal on December 17, 2019 (ECF No. 31) and the Third Circuit subsequently dismissed Plaintiff's Appeal on the basis that he failed to pay the filing fee.  The matter is now ripe for review.

## B. Factual Background[1]

Plaintiff alleges that on March 1, 2017, he was stopped by Defendants, police officers for the Borough of Pottstown. (Am. Compl. ¶ 10.)[2] Defendants asked for Plaintiff's identification and Plaintiff refused to provide it unless they "informed him of the basis for his detention." (Am. Compl. ¶ 10.) Defendants then told Plaintiff he was under criminal investigation, handcuffed and "arrested"[3] him, and placed him in the police vehicle. (Am. Compl. ¶ 11.)

Plaintiff alleges Defendants then asked his fiancée for her identification and threatened to arrest her and place their children in "Child Services" if she did not comply. (Am. Compl. ¶ 12.) Said children were present in the vehicle, screaming. (Am. Compl. ¶¶ 12-13.) Plaintiff's fiancée identified herself and informed Defendants that she and Plaintiff had just purchased a house in Pottstown, and were driving around the area searching for a garage to rent. (Am. Compl. ¶ 13.) After speaking with Plaintiff's fiancée, Defendants then released Plaintiff and issued him a citation for Disorderly Conduct. (Am. Compl. ¶ 14.) Plaintiff was found not guilty of the charge on June 12, 2017. (Am. Compl. ¶ 16.)

As a result of his encounter with Defendants, Plaintiff alleges he suffered "loss of liberty, depression, anxiety, anger, alienation, mental anguish, fear, deprivation, loss of wages, and diminishing mental and physical health." (Am. Compl. ¶ 17.)

---

[1] The following facts are taken from Plaintiff's Amended Complaint. Because "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party[,]" this Court shall proceed accordingly. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

[2] Plaintiff does not specifically allege he was stopped while traveling in a vehicle. However, the same may be inferred by reason of Plaintiff's averment that "[n]o similarly situated White man (in a car with his family including two toddlers) would have been arrested for asking why." (Am. Compl. ¶ 12.)

[3] Although Plaintiff characterizes this brief detention in handcuffs as an "arrest," said statement is a legal conclusion that is not entitled to an inference of truth at the motion to dismiss stage.

### III. Standard of Review

When reviewing a Rule 12(b)(6) motion, district courts must first separate legal conclusions from factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions should be discarded, and well-pled facts given the deference of truth. *Id*. at 210-211. Courts must then determine whether the well-pled facts state a "plausible claim for relief." *Id*. at 211.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 231). Therefore, when determining the sufficiency of a Complaint, the court must: (1) identify the elements a party must plead to state a claim; (2) determine whether the allegations are no more than conclusions and are thus not entitled to the assumption of truth; and (3) assume the veracity of well-pled factual allegations and determine if they "plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d, 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). At this stage of the litigation, a court must only determine whether the non-movant has sufficiently pled its claims, not whether it can prove them. *Fowler*, 578 F.3d at 213.

Regardless of how "inartfully pled" a *pro se* Complaint is, a court must liberally construe such Complaints and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520—521 (1972)). *Pro se* claims may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McDowell v. Del. State Police*, 88 F.3d 188, 189 (3d Cir. 1996) (quoting *Haines*, 404 U.S. at 520) (internal quotations omitted)). Despite the court having to liberally construe a *pro se* Complaint, said Complaint must still satisfy the plausibility standard derived from *Twombly* and *Iqbal*. *Alja-Iz v. U.S. V.I. Dept. of Educ.*, 626 F. App'x 44, 46 (3d Cir. 2015) (citing *Fantone*, 780 F.3d at 193)).

### III. Discussion

#### A. Federal Claims

##### i. Count I: Section 1983 Fourth Amendment Violation

Although somewhat ambiguous as stated, Plaintiff appears to be asserting a claim under 42 U.S.C. § 1983, which "provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. County of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (citing 42 U.S.C. § 1983). Plaintiff alleges that Defendants acted under the color of state law and "sanctioned de facto practices, stopped, detained, seized and arrested Plaintiff without [p]robable [c]ause[,]" in violation of his Fourth Amendment right against unlawful arrest, seizure and detention. (Am. Compl. ¶¶ 2, 20.)  In response, Defendants argue in pertinent part that Plaintiff's claim fails because "he has not stated with any specificity who did what and the incident was nothing more than a *Terry* stop." (Defs.' Br. 3.)

Section 1983 provides that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. It "does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights." *Suber v. Guinta*, 902 F. Supp. 2d 591, 602-603 (E.D. Pa. 2012) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)).

In order to prove his claim, a Section 1983 plaintiff must show that: "(1) the conduct complained of was committed by a person or people acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)).  Thus, in order to survive a motion to dismiss, a plaintiff must plead facts which show *both* that the defendants engaged in conduct "made possible only because the wrongdoer is clothed with the authority of state law[,]"*and* that this conduct violated a Constitutional right. *West v. Atkins*, 487 U.S. 42, 49 (1988).

Here, this is no dispute Defendants were operating under the color of state law. Thus, the only issue is whether Plaintiff has pleaded facts to plausibly demonstrate that Defendants' actions constitute a violation of his Fourth Amendment right against unlawful seizure. Therefore, at this stage of the proceedings, Plaintiff's Amended Complaint must contain sufficient facts to show it is *plausible* Defendants lacked reasonable suspicion when they effectuated the stop, and that they seized him. *Iqbal*, 556 U.S. at 678 (citation omitted) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."). This Court finds Plaintiff has made such a showing.

Aside from alleging there was "no apparent reason" for the stop, this Court construes the basis of Plaintiff's claim to be that Defendants initially refused to tell him why he had been stopped, and then would only say he was "under criminal investigation."  (Am. Compl. ¶¶ 10-11.)  Plaintiff argues this necessarily means they lacked reasonable suspicion for the stop. (*See generally* Pl.'s Resp. Br. 2-6.) While this is not an accurate statement of the law, given the deference due Plaintiff both as a *pro se* litigant and the non-movant, coupled with Defendants' failure to provide a basis on which this Court could conclude Defendants had a *reasonable* suspicion of criminal activity when they stopped him, this Court must deny Defendants' Motion to Dismiss this claim.

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. Amend. IV. "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original). For purposes of the Fourth Amendment, a traffic stop is a seizure of the car's occupants. *Delaware v. Prouse*,, 653 (1979). In most cases, "for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). However, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This is a less demanding standard than probable cause. *Id.*

"What is constitutionally 'unreasonable' varies with the circumstances, and requires a balancing of the 'nature and extent of the governmental interests' that justify the seizure against the 'nature and quality of the intrusion on individual rights' that the seizure imposes." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (quoting *Terry*, 392 U.S. at 22, 24). Thus, the test for reasonableness considers the totality of the circumstances, and can include things like the "location, a history of crime in the area, [a driver]'s nervous behavior and evasiveness, and [the officer]'s 'commonsense judgments and inferences about human behavior.'" *Id.* at 205 (quoting *Wardlow*, 528 U.S. at 124-25).

Assuming Defendants herein were conducting a *Terry* stop, Defendants' decision to place Plaintiff in handcuffs does not *necessarily* mean they unlawfully arrested him. *United States v. Johnson*, 592 F.3d 442, 448 (3d Cir. 2010) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1993)) (noting that placing someone "in handcuffs while . . . conducting an investigation [does not] automatically transform an otherwise-valid *Terry* stop into a full-blown arrest."). However, the *Terry* stop must have been "justified at its inception"; otherwise, placing an individual in handcuffs *is* an unlawful seizure. *See Terry*, 392 U.S. at 20.

Thus, this Court must determine whether Defendants' actions were justified when they initially approached Plaintiff. In other words, the question is "whether the stop was supported by reasonable suspicion *at the outset*." *Johnson*, 592 F.3d at 452 (emphasis added). Aside from the conclusory statement that Defendants stopped him "for no apparent reason[,]" Plaintiff does allege that Defendants subsequently informed him he was "under criminal investigation." (Am. Compl. ¶¶ 10-11.)[4]

---

[4] The remainder of Plaintiff's allegations regarding this issue are conclusions based upon what Plaintiff believes were the officers' collective states of mind. *Compare* (Am. Compl. ¶¶ 10, 12, 20) ("[Defendants] stopped . . . Plaintiff for no apparent reason and asked him for his I.D. . . .

Defendants have failed to provide this Court with any meaningful clarification regarding the reason they stopped Plaintiff. Again, based on the facts in the Amended Complaint, Plaintiff was stopped because he was, according to Defendants, "under criminal investigation." (Am. Compl. ¶ 11.) This statement, without more, does not permit the court to conclude that there was a legitimate basis for the stop. The mere fact that Plaintiff was *told* he was under criminal investigation *does not* mean Defendants were justified in stopping him. In order for a *Terry* stop to be justified, officers must have had a suspicion that the individual was about to engage in *criminal* conduct, and be "able to articulate a chain of inferences that led logically to their belief that criminal activity was afoot." *Johnson*, 332 F.3d at 210.

While there is no *requirement* that Defendants articulate such a chain of inferences at this stage of litigation, the effect of their failure to do so is that they cannot sustain a Motion to Dismiss. Because a court must look at the totality of the circumstances in order to determine whether reasonable suspicion of criminal activity existed at the time of the initial stop, and this Court is unable to do so at this stage of the proceedings, it must deny Defendants' Motion as it relates to the Fourth Amendment claim. *See Stiegel v. Peters Twp.*, 2012 U.S. Dist. LEXIS 105661, No. 12-00377, at *12 (W.D. Pa. July 30, 2012) (noting that when a Section 1983 plaintiff pled facts that were nothing more than conclusory statements that the officer lacked reasonable suspicion to stop him, the plaintiff's Fourth Amendment claim could survive a motion to dismiss because "whether [the defendant] had reasonable suspicion to stop [the] [p]laintiff

---

Plaintiffs' [sic] arrest was done out of spite because he was Black and would not be bullied or intimidated by White men with police badges . . . [Defendants] stopped, detained, seized and arrested Plaintiff without Probable Cause simply because he asked why?") *with* (Defs.'Br. 3-4) ("The few facts alleged, without more, toe the line of a Terry stop. However, Defendants argue that the brief detention coupled with the release do not amount to a 'full-blown arrest' requiring probable cause.").

under the circumstances depends on the resolution of issues of fact."). It is entirely possible that discovery will reveal that, under the totality of the circumstances, Defendants' stop and seizure of Plaintiff was reasonable. Until such time, Plaintiff may maintain his Section 1983 claim.

### ii.     Malicious Prosecution

In Count II of his Amended Complaint, Plaintiff asserts both federal and state law claims for Malicious Prosecution. His federal claim arises under Section 1983, and Plaintiff appears to allege that Defendants violated his Fifth Amendment right to due process when they arrested him and caused him to be charged and prosecuted for disorderly conduct. In response, Defendants argue that Plaintiff's claim should be analyzed in the context of the Fourth Amendment, under which it fails. (Defs.' Br. 4) ("It is well established that the Fourth Amendment, not the Fifth Amendment is the proper vehicle for addressing any unlawful deprivations of liberty incident to criminal proceedings.") (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).

As a threshold matter, a plaintiff *can* bring a Section 1983 malicious prosecution claim arising under the Fifth Amendment. The Third Circuit has held as such. *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998) ("[W]e do not read *Albright* to hold that a malicious prosecution claim can only be based in a Fourth Amendment violation. Accordingly, a Section 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution."). Nonetheless, Plaintiff's Fifth Amendment claim is not cognizable and must be dismissed, as "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009).

Because Defendants are not federal actors, Plaintiff cannot maintain a Fifth Amendment claim against them. Plaintiff's claim similarly fails when analyzed under the Fourth Amendment, as Defendants argue is the proper way for this Court to approach the claim. It is well-established that:

> To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

In this case, Plaintiff has failed to state a Section 1983 malicious prosecution claim because he has not pled any facts that show he was subject to a seizure. For purposes of establishing the seizure element of a malicious prosecution claim, "'[t]he alleged seizure must occur as a result of the malicious prosecution, and thus, it must occur chronologically after the pressing of charges.'" *Fitzgerald v. Martin*, 2017 U.S. Dist. LEXIS 122228, No. 16-3377, at *25 (E.D. Pa. Aug. 3, 2017) (quoting *Basile v. Township of Smith*, 752 F. Supp. 2d 643, 659 (W.D. Pa. 2010)). A seizure occurs "when a criminal defendant is subject to either pretrial custody or some onerous types of pretrial, non-custodial restrictions such as those on travel out of the jurisdiction." *Id.* (citations omitted). Here, Plaintiff was briefly placed in the back of a police car. He was not arrested and then held in pretrial detention, or otherwise restricted pending the adjudication of his case. Thus, he cannot state a Section 1983 malicious prosecution claim arising under the Fourth Amendment.

### B. State Law Claims

#### i. Malicious Prosecution

As stated above, Plaintiff's Amended Complaint contains both federal and state law claims for Malicious Prosecution. Plaintiff's state law claim alleges that "Defendants detained, arrested and with malice commenced civil and criminal proceedings against Plaintiff without lawful purpose/authority[,]" and because all charges terminated in Plaintiff's favor, Defendants are liable for malicious prosecution. (Am. Compl. ¶¶ 23-25.) In response, Defendants argue that "Plaintiff's claim for malicious prosecution . . . fails as a matter of law, as no facts supporting malice have been pled." (Defs.' Br. 5.)

Plaintiff has stated a plausible state law claim for malicious prosecution. In order to state a claim for malicious prosecution under Pennsylvania law, a plaintiff must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

"Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Wagner v. Waitlevertch*, 774 A.2d 1247, 1253 (Pa. Super. 2001). "Malice may be inferred from the absence of probable cause . . . [which] is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993). As explained above, at this stage of the litigation, Plaintiff has alleged sufficient facts which suggest that Defendants did not have probable cause to stop him, and thus, that the subsequent

prosecution had no basis. In addition, Plaintiff has alleged that Defendants charged him with disorderly conduct to cover up the fact that they had engaged in an unlawful stop. (Am. Compl. ¶ 14.) As such, the malice prong is satisfied because there are facts to suggest both that Defendants lacked probable cause when they stopped Plaintiff, *and* that they charged him with disorderly conduct for "an extraneous improper purpose." *Wagner*, 774 A.2d at 1253.

### ii. Intentional Infliction of Emotional Distress

Plaintiff next asserts a state law claim for intentional infliction of emotional distress (IIED). Specifically, Plaintiff alleges that "Defendants, intentionally and with malice inflicted emotional distress upon the Plaintiff arresting and prosecuting him without lawful probable cause." (Am. Compl. ¶ 27.) In response, Defendants argue "Plaintiff fails to allege any facts supporting any extreme or outrageous conduct on the part of the Officers, nor are there any allegations in the Complaint that Plaintiff suffered any form of emotional distress." (Defs.' Br. 7.) This Court agrees, and finds that Plaintiff failed to sufficiently state a claim for IIED.

In order to state an IIED claim, a plaintiff must allege that the defendants: (1) engaged in conduct that was extreme and outrageous, (2) caused the plaintiff severe emotional distress as a result of that conduct, and (3) "acted intending to cause [the plaintiff] such distress or with knowledge that such distress was substantially certain to occur." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 218 (3d Cir. 2001). "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lawson v. Pa. SPCA*, 124 F. Supp. 3d 394, 409 (E.D. Pa. 2015) (quoting *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 217 (3d Cir. 2013)).

Plaintiff has not pled *any* facts that would suggest that Defendants' conduct satisfies this standard. While he alleges that he "has suffered loss of liberty, depression, anxiety, anger, alienation, mental anguish, fear, deprivation, loss of wages and diminishing mental and physical health" as a result of Defendants' conduct, he fails to provide this Court with facts that support his conclusory statement of injury, let alone "extreme and outrageous conduct" by Defendants. (Am. Compl. ¶ 17.)   Inasmuch as this was Plaintiff's second opportunity to sufficiently plead this claim and he has not done so, this Court finds any further attempt would be futile.[5] Accordingly, Plaintiff's IIED claim shall be dismissed with prejudice.  *See Bayer v. Monroe County Children & Youth Servs.,* Civil Action No. 3:04-CV-2505, 2005 U.S. Dist. LEXIS 51697, at *32 (M.D. Pa. Sept. 29, 2005) (concluding "Defendants' alleged conduct could not reasonably be regarded as so extreme and outrageous as to permit recovery" and dismissing IIED claim with prejudice).

    **C.**    **Pennsylvania Constitution and Fourteenth Amendment**

Similar to his original Complaint, Plaintiff once again summarily cites a violation of his rights under Article 1, Sections 1, 8, 9 and 13 of the Constitution of the Commonwealth of Pennsylvania, as well as the Fourteenth Amendment of the United States Constitution. Plaintiff has failed to cure the original deficiencies by articulating any facts or circumstances in relation to

---

[5] Amendments to a Complaint may be made if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  Plaintiff herein does meet any of the above requirements for amendment, and may therefore only amend his Complaint by leave of court or with the written consent of the opposing party. Fed. R. Civ. P. 15(a)(2). Leave must be freely granted "when justice so requires." *Id*.  However, leave may be denied where undue delay, bad faith, dilatory motive, prejudice, or futility are present. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In examining futility, the court applies the legal standards of Rule 12(b)(6). *Id*.

these alleged violations. Consequently, all claims brought pursuant to the Pennsylvania Constitution and the Fourteenth Amendment shall be dismissed with prejudice.[6]

### D.  Declaratory Relief

Plaintiff seeks declaratory relief that Defendants' conduct violated both federal and state law. In response, Defendants argue that "Plaintiff has an adequate remedy at law. Accordingly, Plaintiff's claim for declaratory relief should be dismissed." (Defs.' Br. 8.) This Court agrees. "[E]quitable remedies, including declaratory and injunctive relief, are appropriate only where a plaintiff has no adequate remedy at law." *Cerciello v. Sebelius*, Civil Action No. 13-3249, 2016 U.S. Dist. LEXIS 24924, at *17 (E.D. Pa. Mar. 1, 2016). Here, Plaintiff has a remedy at law, for he can collect damages under Section 1983. *See L.A. v. Lyons*, 461 U.S. 95, 113 (1983) (noting that equitable relief is not available when a plaintiff "has suffered an injury barred by the Federal Constitution, [because] he has a remedy for damages under § 1983."). Thus, this Court shall grant Defendants' Motion to Dismiss Plaintiff's claim for declaratory relief.

### E.  Punitive Damages

Plaintiff seeks punitive damages against all Defendants. (Am. Compl. *Ad Damnum* Clause, §c.) Defendants seek dismissal of any claims for punitive damages. Punitive damages are available against individual Section 1983 defendants, not working in their official capacities, when their "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). Plaintiff alleges that Defendants intentionally violated his rights because they stopped him without a legal basis, and they were aware the stop was unjustified. As such, Plaintiff has alleged that

---

[6] *See* supra n.5.

Defendants were reckless or indifferent. Inasmuch as Plaintiff is suing Defendants in both their official and individual capacities, this Court shall deny this portion of the Motion to Dismiss.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss shall be denied as to Plaintiff's Fourth Amendment claim, state claim for malicious prosecution, and his claim for punitive damages. Said Motion shall be granted in all other respects.[7] Thus, Plaintiff's federal malicious prosecution claim, IIED claim, Fourteenth Amendment, Pennsylvania Constitution claims, and claims for declaratory relief are dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II         J.
C. DARNELL JONES, II.     J.

---

[7] This Court notes that Defendants herein assert a defense of qualified immunity. However, "attempts to obtain qualified immunity by rebutting or supplementing the allegations in [a] [p]laintiff's Complaint are improper at [the motion to dismiss] stage of the proceedings." *Collick v. William Paterson Univ.*, 699 F. App'x 129, 132 (3d Cir. 2017).