UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEKEMA GENTLES | : | |
| *Plaintiff,* | | |
| | | |
| v. | : | |
| | | |
| JEFFREY PORTOCK, *the Borough of Pottstown Police Officer(s), sued in both personal and official capacities*; | : | CIVIL ACTION NO. 19-0581 |
| UNRUH, *the Borough of Pottstown Police Officer(s), sued in both personal and official capacities*; and, | : | |
| UNIDENTIFIED OFFICER, *the Borough of Pottstown Police Officer(s), sued in both personal and official capacities* | : | |
| *Defendants.* | | |

**MEMORANDUM**

**Jones, II  J.**                                                                                                                    **September 29, 2022**

**I.   INTRODUCTION**

Plaintiff Sekema Gentles commenced the above-captioned action against Defendants, alleging violations of both state and federal law in connection with his allegedly unlawful "arrest" by Officers Portock and Unruh.  Currently before the court is Defendants' Motion for Summary Judgment, in which they contend no genuine issues of material facts exist regarding any of Plaintiff's claims, and alternatively, they are entitled to qualified immunity. Plaintiff has responded thereto.   For the reasons set forth below, Defendants' Motion shall be granted.

1

## II.   BACKGROUND

### A. Factual

The undisputed facts borne out by the record, are as follows:

Defendant Portock is a full-time police officer with the Borough of Pottstown Police Department. (SUF ¶ 1.)  On March 1, 2017, Defendant Portock was dispatched to the area of 30 West 5th Street in Pottstown, Pennsylvania for a report of suspicious activity. (SUF ¶ 4.) Dispatch informed Defendant Portock that a black male, operating a white Honda sedan bearing a registration of JDM-1017, was looking into garage windows in a suspicious manner. (SUF ¶¶ 5-6.)  Acting on information received, Defendant Portock arrived at the area of 30 West 5th Street, Pottstown, Pennsylvania at 17:30 hours. (SUF ¶¶ 7-8.)  Unable to locate the vehicle, Defendant Portock cleared the call at 17:31 hours. (SUF ¶ 9.)  However, approximately 11 minutes later, during routine patrol, said Officer observed the subject white Honda at the intersection of Chestnut and North Evans Streets. (SUF ¶ 10.)  Plaintiff, a Black male, had parked his white Honda at this location and was observed standing next to the vehicle.  (SUF ¶¶ 11-12.)  The white Honda sedan bore the same registration as the vehicle identified in the dispatch call. (SUF ¶ 13.)  Defendant Portock parked his patrol vehicle and advised dispatch of his location.  (SUF ¶ 14.)  At this time, Plaintiff was standing outside his car, speaking to an individual identified as Mario Barber.  (SUF ¶ 15.)  Plaintiff observed a police officer pull up in a marked car. (SUF ¶ 16.)  Because Plaintiff was on parole, he did not want to be around any "police involvement."  (SUF ¶ 18.)  Defendant Portock said "hey there" to Plaintiff, at which point Plaintiff waved to the officer. (SUF ¶ 19.)  However, when Defendant Portock informed Plaintiff that he needed to speak to him and that he was

under investigation, Plaintiff got into his car and started the ignition. (SUF ¶¶ 19-21.) Defendant Portock asked Plaintiff for identification, however, Plaintiff refused to provide same because he did not believe he was under any obligation to do so. (SUF ¶¶ 22-24.) Defendant Portock again advised Plaintiff he was conducting an investigation and informed Plaintiff that the law required him to provide identification. (SUF ¶ 25.) Plaintiff responded in a "very assertive tone" and began using explicit language as he again refused to provide his identification. (SUF ¶¶ 26-27.) Defendant Portock advised dispatch that the driver was being uncooperative and requested another unit on the scene. (SUF ¶ 28.) While Plaintiff was sitting in his car, Defendant Portock again advised him he was under investigation and requested that he provide his identification. (SUF ¶ 29.) An additional officer arrived on the scene, as children were approximately twenty feet away and neighbors watched the incident. (SUF ¶¶ 30-32.) Plaintiff exited his vehicle and stood by the driver's door, while Defendant Portock was approximately ten to fifteen feet away, speaking with the other officer. (SUF ¶¶ 33-34.) When Defendant Portock returned to Plaintiff, he proceeded to handcuff him and search his person for identification. (SUF ¶¶ 36-37.) At no time did Defendant Portock pull his weapon on Plaintiff. (SUF ¶ 35.) Plaintiff's wallet was removed and Defendant Portock located Plaintiff's identification. (SUF ¶¶ 37, 39.) Once identified, Plaintiff was placed in the back of Defendant Portlock's patrol vehicle. (SUF ¶¶ 39-40.)

As Plaintiff sat in the back of the police vehicle, Defendant Portlock approached a female passenger who had been sitting in Plaintiff's car, in order to identify her and inquire into the basis of the dispatch report. (SUF ¶ 41.) Sergeant Michael Ponto arrived at the scene and positively identified the female passenger as Tiffany Flores. (SUF ¶ 42.)

Both Defendant Portock and Sergeant Ponto explained several times that Gentles was required to identify himself. (SUF ¶ 43.) It was explained to Ms. Flores that the vehicle was stopped due to a report of suspicious activity involving a Black male, operating a white Honda sedan with Plaintiff's registration number, looking into garage windows. (SUF ¶ 44.) Ms. Flores confirmed she and Plaintiff were buying a house in the area and had been looking into garage windows. (SUF ¶ 45.) After obtaining information from Tiffany Flores, Defendant Portock returned to the patrol vehicle to speak to Plaintiff, remove the handcuffs, release him from the patrol vehicle, and inform him he would be receiving a citation for Disorderly Conduct in the mail. (SUF ¶¶ 46-48, 50.)

Plaintiff had been in the police vehicle approximately 20 minutes. (SUF ¶ 49.) Defendant Portock and Sergeant Ponto were the only Pottstown Police Department Officers present at the scene. (SUF ¶ 52.)[1]

On March 15, 2017, a Citation charging Plaintiff with "Disorderly Conduct - Unreasonable Noise" was filed and a Summons was issued the following day. (SUF ¶ 53.) On April 3, 2017, a hearing was held in Magisterial District Judge Edward C. Kropp's office. (SUF ¶ 54.) However, Plaintiff failed to appear for the April 3, 2017 hearing. (SUF ¶ 55.)[2] Plaintiff did appear before the court on June 12, 2017, at which time he received a not guilty verdict on the charge. (SUF ¶ 56.)

---

[1] Although Plaintiff asserts a claim against Defendant Unruh, said Defendant was not present at the scene. (SUF ¶ 52.)
[2] Defendants cite to the court docket and information provided by Officer Portock in the Incident Report to establish Plaintiff was found guilty *in absentia* on April 3, 2017. However, the docket does not explicitly state so. A summary trial was scheduled to occur on that date and the docket indicates it was continued to June 12, 2017. (ECF No. 53 at 45.) During his deposition, Plaintiff testified "I believe my attorney may have canceled the first date, I believe. And I was told I didn't have to show. The next date I went with my attorney and was fully vindicated of the

### B. Procedural

On February 8, 2019, Plaintiff commenced suit against The Borough of Pottstown, Police Chief F. Richard Drumheller, Mayor Sharon Valentine-Thomas, Borough President Daniel Weand, Borough Manager Mark Flanders, Police Sergeant Ponto, Police Officer Jeffrey Portock, Police Officer Martin, Police Officer Unruh, and an Unidentified Police Officer.  Defendants filed a Motion to Dismiss, which was granted with leave for Plaintiff to amend a limited number of claims.  On September 20, 2019, Plaintiff filed an Amended Complaint against the remaining defendants, asserting violations of his federal and state law rights.  A second Motion to Dismiss was filed and this Court ultimately ruled that Plaintiff's claims were to be limited to a Fourth Amendment violation, a state law claim for malicious prosecution, and a request for punitive damages against Officers Portock and Unruh.[3]  Upon conclusion of discovery, said Defendants filed the instant Motion for Summary Judgment.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, the burden shifts to the nonmoving

---

frivolous charge after having my day in court."  (ECF No. 53 at 34.)  For reasons set forth in the court's discussion below, this issue is not dispositive of any claim.

[3] This Court notes that Plaintiff initially failed to respond to Defendants' Second Motion to Dismiss.  A Show Cause Order was issued and Plaintiff failed to comply.  (ECF No. 25.)  Accordingly, the matter was dismissed.  (ECF No. 26.)  However, Plaintiff later filed a Response, a "Motion to Reopen," and an Appeal to the Third Circuit.  (ECF Nos. 27-29.)  This Court granted Plaintiff's Motion to Reopen (ECF No. 31) and his appeal was dismissed (ECF No. 32).  Defendants' Second Motion to Dismiss was disposed of on June 22, 2020 and formal discovery commenced.

party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To that end, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted). Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id*.

A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003). However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Feb. 23, 2022), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon. Pinpoint citations are required.").

IV. DISCUSSION

    A. Section 1983 Fourth Amendment Violation

Section 1983 provides that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. Section 1983 "does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights." *Suber v. Guinta*, 902 F. Supp. 2d 591, 602-603 (E.D. Pa. 2012) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)).

In order to prove his or her claim, a Section 1983 plaintiff must show that: "(1) the conduct complained of was committed by a person or people acting under color of state law; and

(2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)).  Thus, a plaintiff must ultimately establish that the defendants engaged in conduct "made possible only because the wrongdoer is clothed with the authority of state law[,]"*and* that this conduct violated a Constitutional right. *West v. Atkins*, 487 U.S. 42, 49 (1988).

Here, this is no dispute that while carrying out his job responsibilities as a police officer with the Borough of Pottstown Police Department on March 1, 2017, Defendant Portock was acting under color of state law.  (SUF ¶ 1.)[4]  Thus, the only issue is whether Plaintiff has adduced evidence of record to demonstrate that said Defendant's actions constituted a violation of his Fourth Amendment right against unlawful seizure.

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. Amend. IV. "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original).  "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This is a less demanding standard than probable cause. *Id.*

"What is constitutionally 'unreasonable' varies with the circumstances, and requires a balancing of the 'nature and extent of the governmental interests' that justify the seizure against the 'nature and quality of the intrusion on individual rights' that the seizure imposes." *Johnson v.*

---

[4] The undisputed facts establish that Defendant Unruh was not involved in this matter. Accordingly, this Court's discussion shall focus solely on the other named Defendant Officer: Jeffrey Portock.

8

*Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (quoting *Terry*, 392 U.S. at 22, 24). Thus, the test for reasonableness considers the totality of the circumstances, and can include things like the "location, a history of crime in the area, [a driver]'s nervous behavior and evasiveness, and [the officer]'s 'commonsense judgments and inferences about human behavior.'" *Id.* at 205 (quoting *Wardlow*, 528 U.S. at 124-25).

In this case, the undisputed facts demonstrate that Defendant Portock received a radio call describing a Black male, operating a white Honda sedan bearing a registration of JDM-1017, looking into garage windows in a suspicious manner. (SUF ¶¶ 5-6.)[5] While on patrol several minutes later, Officer Portock observed the subject white Honda—including the matching registration number—with a Black male (later identified as Plaintiff) standing next to it. (SUF ¶¶ 10-13.) After multiple unsuccessful attempts to have Plaintiff identify himself, Plaintiff began speaking to Defendant Portock in a "very assertive tone" and used explicit language while again refusing to provide his identification. (SUF ¶¶ 22-27.) Defendant Portock advised dispatch that the driver was being uncooperative and requested another unit on the scene. (SUF ¶ 28.) After the arrival of a second officer, Sergeant Ponto, Defendant Portock proceeded to handcuff Plaintiff and search his person for identification. (SUF ¶¶ 36-37.)

Defendant Portock's decision to place Plaintiff in handcuffs did not *necessarily* mean Plaintiff was being unlawfully arrested. *United States v. Johnson*, 592 F.3d 442, 448 (3d Cir. 2010) (noting that placing someone "in handcuffs while . . . conducting an investigation [does not] automatically transform an otherwise-valid *Terry* stop into a full-blown arrest.") (citing

---

[5] In his Response to the instant Motion, Plaintiff mischaracterizes the contents of the Incident Report by stating the 911 caller told the 911 Operator there "was a black man in a car, that he did not exit, was looking in garage windows from his car in the back of a house." (Pl.'s Opp'n Summ. J. 4.)

*Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1993)).[6] However, the *Terry* stop must have been "justified at its inception"; otherwise, placing an individual in handcuffs *is* an unlawful seizure. *See Terry*, 392 U.S. at 20. Clearly, the vehicle and plates matching the description, coupled with a Black male standing next to the vehicle, were enough—in and of themselves—to justify the initial stop of Plaintiff. However, Plaintiff's rush to get into his vehicle, start the ignition, and refusal to comply with Defendant Portock's simple request to identify himself provided further justification for the officer to believe Plaintiff had committed an offense. The totality of the circumstances as contained within the record before this Court establishes that Defendant Portock was completely justified in briefly detaining Plaintiff until he could obtain Plaintiff's identification and acquire more information from the passenger of Plaintiff's car.[7] In fact, Plaintiff concedes "Defendant's [sic] were entitled to conduct a limited Terry Stop." (Pl.'s Opp'n Summ. J. 4.) A "limited Terry Stop" is exactly what occurred.

As previously noted, although Plaintiff opposes the instant Motion, he fails to provide this Court with any contrary evidence of record,[8] except his own, self-serving affidavit. It is

---

[6] Plaintiff, without presenting any evidence of record aside from his own self-serving Affidavit, unilaterally concludes his detainment amounted to an arrest. (Pl.'s Opp'n Summ. J. 1.)

[7] Said passenger, Tiffany Flores, confirmed to police that Plaintiff had been looking into garage windows in the area. (SUF ¶ 45.)

[8] Although Plaintiff has submitted a "Concise Statement of Disputed Material Facts in Response to Defendants' Motion for Summary Judgment" (ECF No. 56-1), he has provided no citations to the record in support of his "facts." Notwithstanding the longstanding edict that *pro se* plaintiffs are responsible for following all applicable practices, policies and rules of the court (as further outlined in the "Notice of Guidelines for Representing Yourself (Appearing "Pro Se") in Federal Court" that was sent to Plaintiff on February 8, 2019), Plaintiff was specifically informed of this Court's requirement of pinpoint citations to the record when preparing a Concise Statement of Undisputed Facts or a Response thereto. (ECF No. 51); *see also Millhouse v. United States,* No. 1:19-cv-00665, 2021 U.S. Dist. LEXIS 110510, at *13, n.3 (M.D. Pa. June 14, 2021) (granting a defendant's Motion for Summary Judgment on the basis that "[t]he Court . . . will only consider those facts presented by Plaintiff that are properly supported by record citations."); *Guidotti v. Colvin,* Civil Action No. 15-186J, 2017 U.S. Dist. LEXIS 8496, at *3 (W.D. Pa. Jan. 23, 2017)

well-settled that "[i]n response to a summary judgment motion, a litigant cannot rely on suspicions, simple assertions, or conclusory allegations. Nor can a summary judgment motion be defeated by speculation and conjecture, *or conclusory, self-serving affidavits*." *Parker v. Sch. Dist. of Phila.*, 823 F. App'x 68, 72 (3d Cir. 2020) (emphasis added). "[W]hile pro se complaints are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment." *Morley v. Phila. Police Dep't*, Civil Action 03-880, 2004 U.S. Dist. LEXIS 12771, at *12 (E.D. Pa. July 7, 2004) (quoting *Wilson v. Squirrel*[,] Civil Action No. 00-3819, 2001 U.S. Dist. LEXIS 913, at *8 (E.D. Pa. Jan. 29, 2000) (citations omitted)). "[W]here a pro se litigant is given every opportunity to functionally respond in some meaningful way to a summary judgment motion and fails to do so, a movant who has met his burden of proof shall be entitled to summary judgment in his favor." *Regelman v. Weber*, Civil Action No. 10-675, 2012 U.S. Dist. LEXIS 140398, at *6 (W.D. Pa. Sept. 28, 2012) (citations omitted). To that end, "[t]his Court is not 'required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question.'" *Hammonds v. Collins*, Civil No.: 12-CV-00236, 2016 U.S. Dist. LEXIS 52960, at *8 (M.D. Pa. April 20, 2016). [9]

---

("[P]ro se litigants 'must abide by the same rules that apply to all other litigants.'") (quoting *Mala v. Crown Bay Marina. Inc*., 704 F.3d 239, 245 (3d Cir. 2013)).

[9] During his deposition, Plaintiff repeatedly referred to a video his fiancé (Tiffany Flores) took at the time of the incident, using Plaintiff's phone. (Gentles Dep. 34:20-25; 35:1-6; 37:15-25; 38:1-12; 42:15-25; 43:1-8; 55:15-25; 56:9-3; 59:8-11; 63:11-14; 76:5-18.) When questioned about the existence of the video, Plaintiff responded "The video exists. I just have to find the video. And I think I'll find it. So it definitely exists, because there was a recording of Officer Portock pointed out in his thing that Tiffany was recording the whole time. So it was—*and the video was sent to numerous people*." (Gentles Dep. 76:5-25) (emphasis added); *see also* Gentles Dep. 78:4-25. Plaintiff further testified there were *additional videos* taken by other individuals. (Gentles Dep. 56:14-25; 57:1-25; 58:1-10; 59:1-11.) Despite discovery requests and plenty of time (1,039 days) to do so, Plaintiff never produced <u>any</u> of these videos to substantiate his claims.

11

In view of the foregoing, Defendants' Motion for Summary Judgment on Plaintiff's Section 1983/Fourth Amendment claim shall be granted.[10]

### B. Malicious Prosecution

In order to state a claim for malicious prosecution under Pennsylvania law, a plaintiff must show : "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 791 (3d Cir. 2000). "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Wagner v. Waitlevertch*, 774 A.2d 1247, 1253 (Pa. Super. 2001). "Malice may be inferred from the absence of probable cause . . . [which] is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993).

In this case, it is undisputed that Plaintiff was charged with "Disorderly Conduct - Unreasonable Noise" for the March 1, 2017 incident. (SUF ¶ 53.) On April 3, 2017, a hearing was held in Magisterial District Judge Edward C. Kropp's office. (SUF ¶ 54.) Although Plaintiff apparently failed to appear at the April 3, 2017 hearing,[11] Plaintiff subsequently appeared before the court on June 12, 2017, at which time he received a not guilty verdict on the charge. (SUF ¶¶

---

[10] Although Defendants raise the issue of immunity, the same is rendered moot by reason of this Court's finding on Plaintiff's Fourth Amendment claim.

[11] This Court notes that Plaintiff does not dispute Paragraph 55 of Defendants' Statement of Undisputed Facts, which states Plaintiff was found guilty at the April 3, 2017 listing. (RSUF ¶¶ 1-16.) However, for the reasons set forth in Note 2 herein, this Court relies upon the not guilty verdict rendered on June 12, 2017.

55-56.)  As such, this Court finds the criminal proceeding ended in Plaintiff's favor.  However, as discussed above, Plaintiff has failed to put forth any evidence of record to dispute the fact Defendant conducted a lawful *Terry* stop.[12]  Plaintiff has also failed to adduce any evidence to establish he was compliant with the request to identify himself, or that he did not respond to Defendant Portock in a "very assertive tone" and use explicit language with the officer.  (SUF ¶¶ 26-27.)[13]  As such, the fact that there was probable cause to initiate the proceeding is not in dispute and there can be no finding of malice.

Accordingly, Defendants Motion for Summary Judgment on Plaintiff's Malicious Prosecution claim shall be granted.[14]

### C.     Punitive Damages

Punitive damages are available against individual Section 1983 defendants, not working in their official capacities, when their "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

Inasmuch as: (1) Defendant Unruh was not involved in the March 1, 2017 incident; (2) Defendant Portock was working in his official capacity when he conducted a *Terry* stop with Plaintiff; and, (3) this Court has found said stop to be justified, Plaintiff cannot recover punitive

---

[12] Plaintiff concedes "Defendant's [sic] were entitled to conduct a limited Terry Stop."  (Pl.'s Opp'n Summ. J. 4.)
[13] Instead, Plaintiff simply disputes this fact by stating denying the use of expletives and concluding "Plaintiff never screamed or raised his voice *to the extent it could be considered a public nuisance or public disturbance*."  (RSUP ¶¶ 2-4.)  Conclusions of law do not constitute evidence of record.
[14] Although Defendants raise the issue of immunity, the same is rendered moot by reason of this Court's finding on Plaintiff's Malicious Prosecution claim.

damages. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's demand for Punitive Damages shall be granted.

## V. CONCLUSION

For the reasons set forth hereinabove, Defendants' Motion for Summary Judgment shall be granted in its entirety.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II   J.